NOTH v. EVENING NEWS ASSOCIATION.

LIBEL AND SLANDER—NEWSPAPER STATEMENT AS TO CRIME—CONFESSION—EVIDENCE.

    Dismissal of action of libel against newspaper owner was justified, where the publication stated that defendant's conviction of manslaughter on charge of murder when, he had in fact committed rape of wife of victim of homicide, was a shocking miscarriage of justice was amply justified by plaintiff's signed confession which indicated that he had not been so drunk but that he must have known what he was doing.

Appeal from Wayne; Culehan (Miles N.), J. Submitted October 13, 1953. (Docket No. 61, Calendar No. 45,617.) Decided November 27, 1953.

Action of libel by Walter M. Noth against Evening News Association, a Michigan corporation. Motion to dismiss granted. Plaintiff appeals. Affirmed.

*Andrew J. Hollis,* for plaintiff.

*Butzel, Eamon, Long, Gust & Kennedy (Rockwell T. Gust,* of counsel), for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES
As to truth as justification for libel, see 33 Am Jur, Libel and Slander § 117 *et seq.*

REID, J. This is an action of libel which was dismissed by the circuit court on motion of defendant. Plaintiff appeals.

Plaintiff was tried in circuit court on a charge of murder but was convicted of manslaughter. Plaintiff claims as his cause of action, that defendant maliciously and falsely published a statement in its Detroit newspaper for the purpose of increasing the circulation of the newspaper and prejudicing its readers against plaintiff, and that as a result of the publication, plaintiff was brought to trial and wrongfully convicted of the crime of rape for which he was sentenced to a term of life.

The published statement was as follows:

## "WRONG! WRONG!

"The verdict given by a Mt. Clemens jury in the case of Walter M. Noth is about as shocking a miscarriage of justice as anything which has happened in Michigan courts during recent years.

"This young fiend went forth one evening intending to criminally assault the first woman he met. He took a pistol along intending to shoot down anyone who attempted to prevent his crime.    *   *   *

"By any reasonable interpretation of law, when he pocketed his weapon as he went forth with a criminal object in mind, he premeditated murder. This is how the law is made to apply when the courts are dealing with burglars, bank robbers and others planning crimes less vicious than the one on which Noth was bent.

"There was no question of the man's guilt; he admitted that he killed a citizen so that he could proceed to rape his wife.

"But the jury convinced itself that he had not premeditated murder because his main interest was rape. Therefore he was convicted only of manslaughter.

"This jury need not ask itself why crime flourishes in Michigan; it has served only to increase the burden on other law-abiding citizens.   *   *   *

"Nothing but a capital punishment law could have handled the Noth case properly. Noth was a cold-blooded murderer, deliberately so. He should die! Michigan should have a law under which such wretches would pay the proper price for their crimes!"

Defendant moved to dismiss the declaration which set forth the foregoing published statement as libelous. Defendant in the motion to dismiss refers to a confession marked exhibit A, made by plaintiff before his trial for murder. Plaintiff in his answer to the motion to dismiss, admits that he signed exhibit A, which is as follows:

## "EXHIBIT 'A'

"On June eleventh (11) I Walter Noth went to a picnic with friends and returned about 7 o'clock. Then I went to a tavern where my mother works in the kitchen to get something to eat. I continued to drink beer until I was drunk. Then I went home and got undressed for bed. I had not been with a woman in about 4 months, so I decided to go get one. I never had any money and knew of no one to go to, so I figured I would take my pistol and find a couple of lovers and force the woman to come with me, thinking that the gun would keep the man at bay, but he got out of the car and came at me around the rear of the car. I was excited and shot twice, not remember hearing the shots. Still excited I jumped in the truck and tried to start it, but there was a dead short, so I got out of the truck going to take the car and I seen the woman and remembered what was my purpose. Then I grabbed her and forced her to the ground. She protested but I hit her on the head with the handle of the gun. Then I told her to get in the car and drove her part way to Nine Mile road. Then I told her to get out and go back to her husband. (She called him that when I shot him.) Then I left

for I don't know where but I picked up 2 fellows just west of Toledo, Ohio. I came into Cincinnati. We ate 1 and everybody paid for their own. Then again Tony bought some fruit, and they both bought some gas for I was broke, for I had spent the $5 that I took from the victim.

"Walter M. Noth (Signature)"

The foregoing statement, admitted by plaintiff, amply justified defendant in stating that plaintiff was in fact guilty of murder though convicted only of manslaughter. His claim of extenuating circumstances that he was too drunk to form a criminal intent could well be considered as negatived by his several statements showing consciousness of purpose and recollection of his own actions. In other words, he must have known what he did, for he can tell all about it.

The court was abundantly justified in granting the dismissal. The order appealed from is affirmed. Costs to defendant.

Dethmers, C. J., and Adams, Butzel, Carr, Bushnell, Sharpe, and Boyles, JJ., concurred.